CORRECTED

# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-2103V**

| | |
|---|---|
| SHIORI YODONO,<br><br>Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: June 23, 2026 |

*Amy A. Senerth, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*James Connor Daughton, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On December 12, 2023, Shiori Yodono filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a right shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving influenza ("flu") vaccine on March 10, 2021. Petition at 1, 1 ¶¶ 14. Petitioner further alleged that her "right shoulder (SIRVA) symptoms persisted for more than six months." *Id.* at ¶ 10; *accord.* Ex. 10 at ¶ 6 (sworn declaration).

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

The parties dispute whether the "severity requirement" that all Program claims must satisfy has been met.[3] For the reasons set forth below, I find that Petitioner likely suffered the residual effects of her SIRVA for more than six months,[4] and she has met the other requirements of a compensable Table SIRVA injury. Petitioner is thus entitled to compensation under the Vaccine Act.

## I. Finding of Fact Regarding Duration of Residual Effects/Severity

At issue is whether Ms. Yodono has provided the preponderant evidence needed to establish that she suffered the residual effects of her alleged SIRVA for more than six months. Section 11(c)(1)(D)(i).

### A. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25,

[3] Although the parties engaged in settlement discussions for approximately nine months, they were unable to informally resolve the case. Status Report, filed Mar. 25, 2025, ECF No. 24. Opposing compensation, Respondent argues that "[P]etitioner has not shown, by preponderant evidence, that she had SIRVA-related symptoms persisting beyond six months after vaccination." Rule 4(c) Report, filed Apr. 8, 2025, at 7, ECF No. 25.

[4] Petitioner does not allege, nor would the evidence support, either alternative to establishing the severity requirement: that the alleged injury resulted in death, or "inpatient hospitalization and surgical intervention." Section 11(c)(1)(D)(ii), (iii). Rather, this case turns on Petitioner's inability to prove six months of post-onset sequelae. *See* Section 11(c)(1)(D)(i).

1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs*., 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs*., 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### B. Analysis

I make this finding after a complete review of the record, which includes all medical records, affidavits or declarations, and additional evidence filed. Specifically, I highlight the following:

- Prior to vaccination, Ms. Yodono (a student and then professional basketball player who had immigrated from Japan) underwent surgeries in both left and right knees, experienced a syncope event (similar to one suffered during her childhood) in 2016, suffered a basketball-related left knee injury in 2019, and gave birth to a son in April 2020. Ex. 2 at 19-25; Exs. 6-7, 11-12.

- On March 4, 2021, six days prior to vaccination, Petitioner underwent an immigration examination during which time she reported no current problems and was noted to have one child. Ex. 9.

- On March 10, 2021, Petitioner (then 30 years old) received a flu vaccine, administered intramuscularly in her right deltoid, at a Walgreen's pharmacy. Ex. 1 at 3, 6-7. She also received a measles, mumps, and rubella vaccine ("MMR") subcutaneously in her left arm. *Id.* at 3-5.

- On March 24, 2021, Petitioner sought treatment from her primary care provider ("PCP") for right shoulder pain that she reported had begun two weeks prior, "the same day the influenza vaccine was administered at her local Walgreens." Ex. 2 at 16. Stating that "[t]he administration of the vaccine was uneventful, but she thinks that the vaccine was placed too high on her shoulder," Petitioner described pain raging from three to nine in severity, "generalized throughout the shoulder, and associated with instability and popping." *Id.* She added that the MMR vaccine she received in her left arm "caused some soreness that resolved within 48 hrs." *Id.*

- Upon examination, Petitioner's PCP observed tenderness and significantly reduced range of motion ("ROM"). Ex. 2 at 17. Opining that "[t]he shoulder pain is likely SIRVA," he prescribed 500mg of Naproxen,[5] rest, ice, and x-

[5] Naproxen is a non-steroidal anti-inflammatory drug that is a propionic acid derivative, used in the treatment of pain, inflammation, osteoarthritis, rheumatoid arthritis, gout, calcium pyrophosphate deposition disease, fever, and dysmenorrhea and in prophylaxis and suppression of vascular headache; administered orally or rectally. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S") at 1232 (32nd ed. 2012).

rays and instructed her to follow-up via a telehealth appointment on April 1, 2021. *Id.*

- On April 9, 2021, Petitioner received a COVID-19 vaccine intramuscularly in her left deltoid. Ex. 13 at 2-3.

- On May 28, 2021, more than 60 days after she first sought treatment, Petitioner returned to her PCP, complaining of continued right shoulder pain following receipt of the flu vaccine. Ex. 2 at 11. She reported "that the right shoulder pain and limited ROM had improved significantly but not resolved." *Id.* at 13.

- Characterizing Petitioner's SIRVA as improving and the previous stiffness and instability as resolved, the PCP contrasted the "significantly reduced ROM" observed at Petitioner's first visit on March 24, 2021, with her current "full ROM." Ex. 2 at 13. He instructed Petitioner to continue her current treatment: NSAIDs, ice, and rest; and repeated his order for x-rays. The PCP instructed Petitioner to return for follow-up treatment in two weeks, adding that a steroid injection could be administered if the pain did not resolve in six weeks. *Id.*

- On June 3, 2021, Petitioner underwent x-rays which revealed reduced acromiohumeral space - for which clinical correction was recommended but were otherwise unremarkable. Ex. 2 at 27.

- At a telehealth appointment with her PCP on June 10, 2026, Petitioner reported continued pain, improvement with NSAIDs, no associated numbness, but ongoing difficulties playing professional basketball. Ex. 2 at 8. She expressed her belief that she "[wa]s still not back to baseline function." *Id.* The PCP instructed Petitioner to continue taking NSAIDs and provided her with PT and orthopedic referrals. *Id.* at 9.

- At her initial PT evaluation on June 14, 2021, Petitioner reported an "5/10 ache in the right lateral shoulder, better with bath, KT tape, pain medication, [and] worse with active movement and lifting." Ex. 3 at 6. She also described "numbness and tingling in the middle 3 fingers." *Id.*

- The therapist attributed Petitioner's symptoms to both myogenic[6] and arthrogenic[7] causes (Ex. 3 at 6), concluding they "[we]re consistent with right subacromial impingement and rotator cuff tendon pathology with capsular restrictions that have secondarily developed" (*id.* at 8). He recommended twice weekly PT sessions for four weeks which he expected would allow Petitioner to meet her long-term goals. *Id.* at 7-8. There is no evidence showing Petitioner attended additional PT sessions after mid-June.

- On October 11, 2021 (approximately four months after her prior PT session), Petitioner visited a chiropractor and complained of sharp and achy right shoulder pain that began the day after her March 2021 vaccination and continued for the past seven months. Ex. 4 at 3. She described "sharp discomfort and stiffness when lifting an object over her head, shooting a basketball, and sleeping . . . [and] intermittent numbness in her fingers of her right hand." *Id.*

- Noting pain in Petitioner's infraspinatus, infraspinatus, and deltoid region, as well as other areas such as the upper trapezius and rhomboid major, the chiropractor applied ultrasound and combination therapy and recommended six weeks of treatment. Ex. 4 at 3.

- During nine subsequent visits in October and November 2021, Petitioner continued to report slight improvement with treatment but a return of some symptom severity thereafter. Ex. 4 at 7-19. By her second visit on October 15, 2021, she stated that "she [wa]s moving better but not yet back to full ROM." *Id.* at 8. By her ninth visit on November 8, 2021, the occurrence of Petitioner's symptoms had reduced from 76-100 percent of the time to only 26-50 percent. *Compare id.* at 7 *with id.* at 16.

- At the October 15, 2021 visit, the chiropractor stated that he would refer Petitioner to a physical therapist for treatment, but there is no evidence that Petitioner attended any PT. Ex. 4 at 7.

- Petitioner returned for additional chiropractic treatment in February 2022. Ex. 4 at 20-22. She attended a total of twelve visits from February through

---

[6] The therapist's use of the term arthrogenic appears to mean pain originating in the joint. Arthro is "a combining form denoting some relationship to a joint or joints." DORLAND'S at 157.

[7] Myogenic means "originating in myocytes or muscle tissue." DORLAND'S at 1223.

April 2021. *Id.* at 20-36. At her last visit on April 5, 2022, she "state[d] she continue[d] to have pain at [the] end range of motion in abduction." *Id.* at 35.

- In her sworn declaration, signed under penalty of perjury on November 13, 2023, Petitioner recounted that she experienced shooting pain down her arm immediately upon vaccination. Ex. 10 at ¶ 4. Although she provided few details regarding her symptoms thereafter, she insisted that she suffered the residual effects or complications of her right shoulder injury for more than six months. *Id.* at ¶ 6.

To satisfy the Vaccine Act's severity requirement in this case, Petitioner must show that she suffered symptoms of her alleged SIRVA beyond September 10, 2021 (assuming a same day onset which the record preponderantly supports). Although the residual effects of her SIRVA may be intermittent or mild, she must show they continued to some extent through at least that date.

Respondent highlights Petitioner's symptom improvement from late March through May 2021 and failure to pursue the recommended treatment, contrasting those facts with the more severe and additional symptoms (fingertip numbness) she reported on June 14, 2021. Respondent thus theorizes that Petitioner's subsequent symptoms were not SIRVA-related, but the product of a new injury sustained while playing basketball. Rule 4(c) Report at 7-9. To support this argument, Respondent references the difficulties Petitioner encountered when attempting to play basketball, and the pre-vaccination basketball-related knee injury she sustained in 2019. *Id.* at 8-9. Respondent favorably compares the facts and circumstances in this case with one I dismissed for failure to establish severity after determining that a collegiate volleyball player's later symptoms were attributable to an athletic injury. *Id.* at 9 (citing *Gonzalez v. Sec'y of Health & Hum. Servs.,* No. 21-1003V, 2024 WL 2874047 (Fed. Cl. Spec. Mstr. May 6, 2024), *aff'd* 173 Fed. Cl. 728 (2024)).

Respondent raises valid concerns about severity, rooted in the fluctuation of Petitioner's symptoms, and her failure to pursue the recommended treatment. But these issues do not prevent Petitioner from establishing the needed six-months severity – although they are relevant when determining the appropriate amount of compensation for her pain and suffering.

Many of the facts relied upon by Respondent as undermining severity are less damaging than Respondent supposes. For example, Petitioner's failure to return for further treatment until approximately two months after her initial PCP visit on March 24, 2021, merely suggests she obtained good pain relief from the Naproxen she was

prescribed.[8] But she clearly reported continued difficulties, albeit less symptom severity, when she returned for further treatment in late May 2021. Ex. 2 at 13. Thus, the record does not support a complete symptom resolution at this time.

Thereafter, Petitioner likely aggravated her SIRVA injury in late May and June 2021, by attempting to play basketball.[9] But the fact that the worsening of her symptoms may be due to this physical activity would not negate the existence of ongoing SIRVA-related symptoms. Here, the aggravation occurred while Petitioner was actively pursuing treatment. And any attempt by Petitioner to play basketball while experiencing the pain of a SIRVA would not be unreasonable, given her employment as a professional basketball player.

Most importantly, Petitioner first mentioned the new symptom Respondent identified (fingertip numbness) during her initial PT evaluation on June 14, 2021, prior to the four-month gap in treatment from mid-June to mid-October 2021, when the residual effects of her SIRVA were clearly ongoing. Had this complaint not manifested until October 2021, after an apparent cessation of SIRVA-related symptoms, Respondent's theory - that Petitioner's later symptoms were due solely to an intervening basketball-related injury - would be more persuasive.

Overall, the evidence does not show a complete resolution of SIRVA-related symptoms followed by an unrelated, intervening cause – such as a specific injury that could account for her later symptoms. Such considerations formed the basis for my finding in *Gonzalez*, but are clearly lacking in this case. *See Gonzalez*, 2024 WL 2874047, at *5-7.

Instead, the record supports the conclusion that SIRVA-related symptoms continued through at least October 2021, albeit mild enough to result in several treatment delays and possibly aggravated by physical activity. Accordingly, I find there is preponderant evidence to establish Petitioner suffered the residual effects of her alleged SIRVA for more than six months (although as noted above Respondent's objections do

---

[8] At her initial PCP visit on March 24, 2021, Petitioner's PCP prescribed enough Naproxen to last 45 days. Ex. 2 at 17. He also instructed Petitioner to participate in a telehealth appointment on April 1, 2021. *Id.* However, Petitioner did not seek treatment again until 65 days later on May 28, 2021. *Id.* at 11.

[9] By her second PCP visit on May 28, 2021, Petitioner had obtained definite symptom improvement. Ex. 2 at 13. She reported difficulties while attempting to play basketball on June 10, 2021 (*id.* at 8), and worsened symptoms, including fingertip numbness four days later on June 14, 2021 (Ex. 3 at 6). It can be surmised that Petitioner' attempts to play basketball may have resulted in her worsening and new symptoms. At her PT evaluation on June 14, 2021, Petitioner reported that she was "[u]nable to play basketball, not currently attending practice." Ex. 3 at 6.

support the view that Petitioner's injury was not notably severe for purposes of calculating damages).

## II. Additional Requirements for Entitlement

### A. Legal Standards

In addition to requirements concerning the vaccination received, the duration of petitioner's injury (discussed above in Section II), and the lack of other award or settlement,[10] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B) (2017). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

---

[10] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Analysis

Respondent has identified no further objections to compensation, and I find Petitioner has otherwise satisfied all criteria for a Table SIRVA injury following receipt of the flu vaccine. There is no evidence of prior right shoulder pain, inflammation, or dysfunction or an alternative cause for Petitioner's symptoms. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv) (first and fourth QAI criteria). And Petitioner experienced pain within 48 hours of vaccination and exhibited pain and limitations in ROM solely in her right, injured shoulder. *E.g.,* Ex. 2 at 16-17; *see* 42 C.F.R. § 100.3(c)(10)(ii) & (iii) (second and third QAI criteria).

As I have determined in this ruling, the record supports a finding that Petitioner suffered the residual effects of her SIRVA for more than six months. *See* Section 11(c)(1)(D)(i) (the Vaccine Act's six-month severity requirement). Additionally, the vaccine record shows Petitioner received the flu vaccine administered in Illinois. Ex. 1 at 2-3; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, there is no evidence that Petitioner has collected a civil award for her injury. *See* Section 11(c)(1)(E) (lack of prior civil award). Thus, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## III. Appropriate Amount of Compensation

Although I have found Petitioner entitled to compensation, I do not expect the amount awarded for Petitioner's past pain and suffering to be great. Throughout her injury, Petitioner failed to pursue medical treatment consistent with the advice of professionals. In addition to the two-month gap in treatment during the spring of 2021, she failed to pursue orthopedic treatment or attend any PT sessions after her initial evaluation on June 14, 2021. *See* Ex. 2 at 9 (June 10, 2021 referrals for both PT and orthopedic sports); Ex. 3 at 7-8 (the therapist's recommendation that Petitioner attend twice weekly PT sessions for four weeks). Nor did she pursue PT in October 2021, as recommended by her chiropractor. Ex. 4 at 7. Throughout her SIRVA, Petitioner required only conservative treatment: NSAIDs, minimum PT, and chiropractic care. Ex. 2 at 17, 13, 9 (chronologic order); Ex. 3 at 7-8; Ex. 4. Thus, Petitioner should not expect a substantial pain and suffering award, given the overall preponderance of evidence on this issue.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA and the Vaccine Act's severity requirement needed for both Table and non-Table claims. Petitioner is entitled to compensation in this case.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master